IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**RON TOLSON,**

  Plaintiff,

vs.               Civ. No. 07-462 ACT

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

  Defendant.

## MEMORANDUM OPINION AND ORDER

  **THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand filed September 25, 2007. Doc. 13. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well taken and will be granted.

## I.  PROCEDURAL RECORD

  Plaintiff, Ron Tolson, filed his application for Disability Insurance Benefits on September 30, 2003. Tr. 49-51. He is alleging a disability since September 26, 2003. Tr. 49. His application was denied at the initial and reconsideration level.

  The ALJ conducted a hearing on June 21, 2005. Tr. 375. At the hearing, Plaintiff was represented by counsel. On January 20, 2006, the ALJ issued an unfavorable decision finding that Plaintiff retains the residual functional capacity ("RFC") for a limited range of light work which does not preclude him performing his past relevant work as a purchasing agent, sales representative

and sales manager.  Tr. 23.

On April 6, 2007, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ.  Tr. 5-7.  The Plaintiff subsequently filed his Complaint for judicial review of the ALJ's decision on May 10, 2007.

On March 1, 2006, Plaintiff filed a subsequent claim.  On August 6, 2006, Plaintiff was found to be disabled as of January 26, 2006.  Thus, the issue on appeal is whether Defendant applied the correct legal standards and whether substantial evidence in the record supports the Defendant's final decision that Plaintiff was not disabled from his alleged onset date of September 26, 2003, until January 26, 2006, when he was found disabled.

Plaintiff was born on August 6, 1948.  Tr. 49.  At the time of the ALJ's decision, Plaintiff was 57 years old with a high school education and some vocational training in the military.  Tr. 49, 104, 378-379.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards.  *See Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion."  *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe

physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1)  he is not engaged in substantial gainful employment; 2) he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3) his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; and 4) he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

### III.  MEDICAL HISTORY

Plaintiff's treatment records are from the Veterans Administration ("VA") exclusively.

A. Diabetes

Plaintiff began to experience diabetic symptoms in June of 2002.  Tr. 226.  He was prescribed Metformin.  Tr. 225.  A review of the VA records shows that his blood sugars were controlled.  On January 23, 2004, Plaintiff's glucose was at 127 with a normal range described as between 56-130.  Tr. 176.  On July 6, 2004, Plaintiff reported that his blood sugars had been

between 140-300 range with most readings in the 140's. Tr. 309. On February 23, 2005, Plaintiff reported that his blood sugars were controlled with "numbers in the 120-150 usually." Tr. 345.

### B. Neuropathy

On June 12, 2003, Plaintiff was seen by Dr. Molly King for a poly-neuropathy evaluation due to his diabetes. Tr. 226-27. On physical examination, Dr. King found:

> "No atrophy is noted. Sensation is normal in feet. Tone is normal. Right arm strength is normal. Left arm strength is normal. Right leg strength is normal. Left leg strength is normal."

Tr. 227. Nerve conduction studies were conducted and were normal. Dr. King found there was "no sign of peripheral neuropathy by electrodiagnostic testing or clinical exam." *Id.*

On November 12, 2004, Plaintiff was prescribed Neurotin for peripheral neuropathy. Tr. 275. On February 23, 2005, it was noted that his neuropathy was "worsening secondary to EtOH use and DM." Tr. 347.

### C. Headaches

The medical record also indicates that Plaintiff had chronic headaches. On April 2, 2004, Dr. John Adair, a neurologist, noted that Plaintiff had two types of headaches which had increased in frequency and intensity over the past six to eight months. The first headache was in the back of the neck, extending into the occipital and parietal areas of the head. These headaches occurred daily and lasted from three to four hours. Plaintiff rated his pain as an 8 on a scale of 1 to 10. The second type of headache occurred over the temples bilaterally once or twice per week, lasting 15 to 20 minutes, with a pain rating of 10. Plaintiff experienced vision changes, blurriness, dizziness, nausea, vomiting, and increased sensitivity to noise but no weakness, numbness, or sensitivity to light. Dr. Adair diagnosed Plaintiff with chronic tension headaches and prescribed pain medication. Tr. 329-

31.

### D.  Post Traumatic Stress Disorder and Mental Health

On July 8, 2003, Plaintiff underwent a mental health assessment by Ella Nye, Ph.D., clinical psychologist.  He was referred to Dr. Nye for evaluation and treatment of PTSD.  Tr. Tr. 221-24.  In her report, Dr. Nye noted that:

> Pt. describes long history of difficulties, since he returned from Vietnam in 1970.  Sxs were quite marked upon return to US, with some fluctuation in intensity/frequency over the years since that time.  Pt. began experiencing increase in difficulties over 2 years ago, and then additional exacerbation within the last six months, particularly when Pt. was out of work.  At present Pt describes intrusive memories, nightmares, flashbacks, potentiated startle response, difficulties w/anxiety, irritability and anger, sleep disturbance, feelings of depression, difficulties w/closeness to others, feelings of estrangement from others, social isolation except for family, avoidance of triggers for anxiety and/or intrusive sxs.

Tr. 221.

Dr. Nye's assessment was as follows:

> "Pt. is a 54 yo Army veteran w/fairly good functional history, presenting w/full spectrum ptsd secondary to combat.  Intrusion/avoidance pronounced.  Also probs w/depression and long term etoh abuse.  Pt. would be appropriate for tx in ptsd/trauma clinic once etoh issues addressed, and Pt's states willingness to do so."

Tr. 223.  Dr. Nye found Plaintiff had a GAF score of 45.[1]

On July 10, 2003, Plaintiff was treated by Dr. Thomas Vosburg ("Vosburg"), staff psychiatric for his "recently diagnosed" PTSD.  In reviewing the history of patient's trauma, Dr. Vosburg noted:

> "Persistent corrosive guilt associated with depression, sleep disorder, nightmares and mildly excessive drinking used to numb guilt are leading symptoms.  Depression has gradually progressed over the past two years.  At the same time patient has come to

---

[1] GAF is a "clinician's judgment of the individual's overall level of functioning."  *Diagnostic and Statistical Manual of Mental Disorders*, 4th Ed., 2000.  A GAF of 45 falls in the range of "serious symptoms or any serious impairment in social, occupation, or school functioning."  *Id.*

5

feel that this symptom should not continue to dominate his life as it has for 13 years." Tr. 221.  He was prescribed Citalopram, 20 mg per day.  Tr. 220-221.

On March 3, 2004, Vosburg completed a Physician's Questionnaire and a Mental Residual Functional Capacity Assessment concerning Plaintiff's mental illness.  Tr. 258-263.  He stated that he had treated Plaintiff between July 10, 2003 through September 25, 2003.  Tr. 258.  Dr. Vosburg diagnosed Plaintiff with post-traumatic stress disorder, depressive disorder and alcohol dependence. He recommended that Plaintiff attend a PTSD group and substance abuse meetings but Plaintiff declined these recommendations.  Dr. Vosburg also noted that Plaintiff did not tolerate antidepressant medications.

In addition, the record contains a Psychiatric Technique Review Form ("PTRF") signed by a physician on November 26, 2003 and a Ph.D. on February 12, 2004.  Tr. 151-63.  The PTRF indicates that Plaintiff has three non-severe impairments, affective disorders, anxiety-related disorders and substance addiction disorders.  Tr. 151.  The doctors found that Plaintiff had no restriction in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation.

Dr. Mark Garfinkle completed a Physician's Questionnaire on January 5, 2004.  Tr. 165-69. He stated that Plaintiff's medical diagnoses included PTSD, diabetes mellitus, and tension headaches. He concluded that with all of Plaintiff's limitations, he could work only two hours per day and ten hours per week.  Tr. 166.

### IV. DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ erred in not properly considering the disability rating assigned to him by the Department of Veteran Affairs ("VA").  The record demonstrates the

...

following: On April 18, 2003, the VA found that Plaintiff's peripheral neuropathy for his right foot and leg and left foot and leg was service-connected with an evaluation of 10%, each effective December 12, 2002, and that the evaluation for his diabetes mellitus type II, which was currently 10 %, is continued. Tr. 74.

On August 22, 2003, the VA found that Plaintiff's PTSD was service-connected with an evaluation of 50 %, effective July 8, 2003 and an overall or combined rating of 70%. Tr. 70-73. The rating decision states:

> Your military personnel file shows participation in counteroffensives and duties in Viet-Nam as a combat construction foreman and combat blaster. While you have no prima facia evidence of combat medals, the VA medical records show a diagnosis of PTSD related to your duties in Viet Nam in hostile environments. Symptoms include corrosive guilt, depression, sleep disorder, nightmares, and mildly excessive drinking to numb guilt. Veteran's Global Assessment of Functioning Scale (GAF) was 45, representative (sic) major impairment in reality testing or several areas such as work, school, family relations, judgment, thinking, or mood.

Tr. 72.

On October 1, 2003, the VA found that Plaintiff was 70% disabled and his PTSD was evaluated at 50%. Tr. 67-69. The rating decision stated that "[t]he effective date will be the date you were awarded entitlement to your permanent and total disability, due to individual unemployability, which was September 27, 2003." Tr. 67.

In her decision, the ALJ stated the following:

> I have also considered the VA rating decision showing that the claimant had a 100 percent entitlement rate effective September 27, 2003 and an overall and combined disability rating of 70 percent (Exhibit 5-D, p.3). This determination is not binding on the Social Security Administration, since it does not reflect a finding of what the claimant can actually do after considering his impairments and limitations and whether he can do his past work or other work existing in significant numbers in the national economy.

Tr. 21-22.

The VA determination is not binding but is "entitled to weight and must be considered." *Baca v. Department of Health and Human Services*, 5 F.3d 476, 480 (10th Cir. 1993) *(citing Fowler v. Califano*, 596 F.2d 600, 604 (3rd Cir. 1979) (holding findings by other agencies "are entitled to weight and must be considered.")); *See also Richter v. Chater*, 900 F. Supp. 1531, 1538-39 (D. Kan. 1995) (finding it is "beyond dispute" in the Tenth Circuit that another agency's finding of disability "must be considered and given some weight"); *Thomas v. Weinberger*, 398 F. Supp. 1035, 1036 (D. Kan. 1975) (100 % disability benefits from Veterans Administration is "persuasive" evidence "of the fact of disability.")

"Although the Tenth Circuit has not stated what weight a VA disability determination should receive, it is clear that it should receive some weight, and a passing reference will not suffice." *McLean v. Barnhart*, 2004 WL1212045 at *3 (D. Kan. 2004). In *McLean* the Tenth Circuit found it proper discount a VA disability rating of 20%. To ignore, without explanation, a disability determination of 70%, is improper. *Id.*

The reasoning for such consideration is found in Social Security Ruling 06-03p, which states, in part, that "evidence of a disability decision by another governmental agency....cannot be ignored and must be considered" as the Commissioner is "required to evaluate all the evidence in the case records that may have a bearing on [the] determination or decision of disability, including decisions by other governmental....agencies (20 CFR 4 04.1512(b)(5) and 416.912(b)(5))." *SSR 06-03P*, 2006 WL 2329939 at *6. "These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules." *Id*. at *7. The Court finds that consideration of the VA decisions would have been particularly helpful in this case since the VA and the ALJ were

8

relying on precisely the same records.

The ALJ's perfunctory rejection of the VA's disability rating is insufficient. Thus, the Court must remand this case for an application of the proper legal standard with respect to this evidence. *Richter*, 900 F. Supp. at 1539.

As this error requires a remand, the Court does not need to address Plaintiff's remaining arguments. However, the Court notes that the ALJ found that Plaintiff's depression and PTSD were not "severe" impairments. Tr. 18. The VA evaluated Plaintiff's PTSD at 50%. Tr. 68. The ALJ's failure to discuss the significance of the VA's rating in concluding that Plaintiff had not met the "de minimus" required showing of a severe impairment at step two is also reversible error. *Grogan v. Barnhart,* 399 F.3d 1257, 1263 (10th Cir. 2005).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is granted and remanded to the Commissioner for proceedings consistent with this opinion.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**